249 P.3d 5 (2011)
In the Matter of D.D.M.
No. 101,868.
Supreme Court of Kansas.
March 25, 2011.
*6 Todd G. Thompson, county attorney, argued the cause, Cheryl A. Marquardt, assistant county attorney, and Steve Six, attorney general, were with him on the brief for appellant.
Rhonda Keylon Levinson, of Levinson & Levinson PA, of Basehor, argued the cause, and Benjamin N. Casad, of Kansas City, was with her on the briefs for appellee.
The opinion of the court was delivered by JOHNSON, J.:
Proceedings were commenced against D.D.M. under the Juvenile Offender Code, and the State filed a motion to prosecute him as an adult. The district court declined to order adult prosecution, finding that D.D.M. should be prosecuted under the extended juvenile jurisdiction procedure. The State appealed, and the Court of Appeals reversed the district court and remanded with directions to prosecute D.D.M. as an adult. We granted D.D.M.'s petition for review. Finding that the Court of Appeals improperly reweighed the evidence, we reverse and remand for the district court to proceed with extended jurisdiction juvenile prosecution.

FACTUAL OVERVIEW
In November 2008, D.D.M., age 16, along with two of his peers, approached Roy Simpson and Damon Osborne, who were walking near a gas station parking lot; D.D.M. was riding a bicycle. One of the young men pointed a gun at Simpson and Osborne and told them to empty their pockets. The robbers collected Simpson's wallet, checkbook, cellular telephone, glasses, and digital camera, as well as a hat and one dollar from Osborne. Before leaving, one of the robbers told Simpson that if he called the police, the victims would be killed.
When the police responded to the scene, Simpson described the three young men and their clothing. Officer Demetric Mariner left in search of the suspects and located two young men at the side of a Wendy's restaurant near the gasoline station. When the *7 officer shined a search light on the suspects, they fled afoot. Officer Mariner caught, detained, and later arrested D.D.M., albeit he did not possess any of the stolen property or a weapon. Meanwhile, Officer Brandon Mance apprehended and caught the second young man, who was in possession of Simpson's wallet and checkbook. A cellphone and paintball gun were recovered near the location where Officer Mariner originally encountered the two suspects. A bicycle was located near where the victims were robbed.
A juvenile offender proceeding was commenced against D.D.M. for having committed acts which would have been felonies if committed by an adult, specifically, one count of aggravated robbery and two counts of criminal threat. The State then filed a motion to prosecute D.D.M. as an adult, alleging that he was presumed to be an adult under K.S.A. 2010 Supp. 38-2347(a)(2). The hearing on that motion was to double as a preliminary hearing in the event adult prosecution was authorized. See K.S.A. 2010 Supp. 38-2347(b) (permitting court to make preliminary hearing findings at hearing on motion to prosecute as an adult).
At the hearing, the State called Officer Mariner, Officer Mance, and Simpson to testify, and the district court considered the court files relating to D.D.M.'s prior juvenile proceedings. D.D.M. did not call any witnesses. Further, D.D.M.'s attorney conceded the existence of the facts necessary to establish the presumption of adult prosecution under K.S.A. 2010 Supp. 38-2347(a)(2), i.e., D.D.M. had a prior felony adjudication, he was 16 years old, and he was currently charged with a severity level 3 offense. Instead, the defense focused on the facts which rebutted the presumption of adult prosecution and argued that the district court should utilize the extended juvenile jurisdiction procedure.
All the hearing participants agreed that K.S.A. 2010 Supp. 38-2347(e) required the district court to consider the following eight statutory factors:
"(1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution;
"(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
"(3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted;
"(4) the number of alleged offenses unadjudicated and pending against the juvenile;
"(5) the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender under this code or the Kansas juvenile justice code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
"(6) the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living or desire to be treated as an adult;
"(7) whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction under this code; and
"(8) whether the interests of the juvenile or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution."
Pointing to the first three factors, the State argued that the current offense was a serious person felony which had been committed in an aggressive, violent, premeditated, and willful manner. Further, the State argued that factor (5) favored adult prosecution because the juvenile offender resources had been exhausted on D.D.M. in his prior proceedings, albeit the State conceded that the court could exercise juvenile jurisdiction over D.D.M. until he was 22½ years old.
D.D.M.'s counsel countered that an analysis of the eight factors should lead the court to conclude that extended juvenile jurisdiction was warranted. The defense pointed out that the weapon used was merely a paintball *8 gun. Further, because D.D.M. had previously been in a youth correctional facility for less than a year, he had not fully utilized its resources and rehabilitation in the juvenile system remained a viable option.
After taking the matter under advisement, the district court issued a memorandum decision which provided, in part:
"18. There is a presumption in this case that the respondent should be considered an adult.
"19. The offenses that the Respondent is charged with are level 3 and level 9 person felonies. While very serious offenses they do not arise to nongrid felonies or level 1 or 2 person felonies. Further, the community may be protected without adult prosecution as an extended juvenile prosecution could result in the juvenile correctional facility for more than 6 years.
"20. The alleged offenses do not seem to have been committed particularly aggressively. The court does recognize that the threat of violence was present in all 3 charges but acts of violence did not occur.
"21. The alleged offenses were against persons not property.
"22. Except for this case there are no unadjudicated alleged offenses pending against the Respondent.
"23. The Respondent has been previously adjudicated on 2 occasions to be an offender but neither case involved allegations that were against persons.
"24. The Respondent may not be as mature as other juveniles his age as evidenced by the crime being committed by juveniles who were on bicycles. Most 16 year olds have driver's licenses allowing them to drive cars. The court does recognize that the Respondent has been convicted of Driving Under the Influence of Alcohol or Drugs. This may explain why bicycles were used in the commission [sic] the alleged offense.
"25. The Respondent is more likely to be rehabilitated in the juvenile system than in the adult correctional system. The juvenile system will have 6 years or more to rehabilitate the Respondent if he is found to have committed the alleged offenses.
"26. The interests of the Respondent and community will be better served if the juvenile is prosecuted under the extended juvenile prosecution statutes.
"27. The court finds that the Respondent has [met] his burden of proof in overcoming the presumption that he be declared an adult for prosecution in this case. The Respondent shall be prosecuted under the extended jurisdiction juvenile prosecution statutes."
The State filed an interlocutory appeal. The Court of Appeals opined that the evidence was insufficient to support the district court's decision to prosecute D.D.M. under the extended jurisdiction juvenile procedure. It reversed and remanded the case to the district court with directions to prosecute D.D.M. as an adult. We granted D.D.M.'s petition for review, in which he asserts: (1) the juvenile statutes do not authorize an appeal of an order for extended jurisdiction juvenile prosecution; (2) the Court of Appeals erred in finding an absence of substantial competent evidence to support the district court's ruling; and (3) the appropriate remedy for a finding that D.D.M. did not effectively rebut the presumption of adult prosecution was to remand for an evaluation of the propriety of extended jurisdiction juvenile prosecution under K.S.A. 2010 Supp. 38-2347(f)(2), rather than the Court of Appeal's disposition of ordering the district court to prosecute D.D.M. as an adult.

COURT OF APPEALS JURISDICTION

A. Standard of Review

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. State v. Ellmaker, 289 Kan. 1132, 1147, 221 P.3d 1105 (2009).

B. Analysis

D.D.M. first contends that the Court of Appeals did not have jurisdiction to consider the State's appeal of the district court's order of extended jurisdiction juvenile prosecution. He acknowledges that K.S.A. 2010 Supp. 38-2381(a)(2) specifically permits the *9 State to appeal from an order "denying authorization to prosecute a juvenile as an adult." The crux of his argument is that an extended juvenile jurisdiction proceeding is a hybrid procedure which includes elements of both adult and juvenile proceedings. Therefore, he argues that the district court's order to employ the hybrid procedure was not an outright denial of the State's motion to prosecute D.D.M. as an adult.
For support, D.D.M. cites to the dissent in In re L.M., 286 Kan. 460, 485, 186 P.3d 164 (2008), which discussed the character of an extended jurisdiction juvenile proceeding:
"Extended jurisdiction juvenile prosecution became effective in 1997 (see L.1996, ch. 229, sec. 67), and is a mechanism whereby serious or repeat juvenile offenders who might otherwise have been waived up to adult court may remain in the juvenile sentencing system. In an extended jurisdiction juvenile prosecution, the court imposes both a juvenile and an adult sentence. The adult sentence is stayed as long as the juvenile complies with and completes the conditions of the juvenile sentence. If, however, the juvenile violates the conditions of the juvenile sentence, the juvenile sentence is revoked, the adult sentence is imposed, and the juvenile court transfers jurisdiction of the case to adult court." (Emphasis added.) (McFarland, C.J., dissenting.)
The Court of Appeals rejected D.D.M.'s logic. The panel noted that the district court commented that it had two options: order adult prosecution or order extended jurisdiction juvenile prosecution. Accordingly, the election of the extended jurisdiction juvenile prosecution option was an effective denial of the State's request for the adult prosecution option. Although the district court was incorrect in stating that it had only two options, we agree that the order for extended jurisdiction juvenile prosecution effected a denial of the State's motion for adult prosecution.
As noted in the In re L.M. dissent language upon which D.D.M. relies, the order for extended jurisdiction juvenile prosecution keeps the case under the jurisdiction of the juvenile court for adjudication and for enforcement of a juvenile sentence. Only if the juvenile fails to successfully complete the juvenile sentence will the case be transferred to the jurisdiction of the adult court. Even then, the adult court's jurisdiction is limited to the imposition and enforcement of the adult sentence; the juvenile will not be prosecuted in adult court. 286 Kan. at 485, 186 P.3d 164.
Moreover, the ordering of extended jurisdiction juvenile prosecution when adult prosecution has been requested is authorized under K.S.A. 2010 Supp. 38-2347(f)(3). That provision includes the condition precedent that "prosecution as an adult is not authorized." K.S.A. 2010 Supp. 38-2347(f)(3). Therefore, the order for extended jurisdiction juvenile prosecution must necessarily include a denial of the request for adult prosecution.
Accordingly, the relief the State sought, i.e., the immediate transfer of jurisdiction to the adult court for prosecution, was effectively denied by the court's order for extended jurisdiction juvenile prosecution. The provisions of K.S.A. 2010 Supp. 38-2381(a)(2) provided the Court of Appeals with explicit statutory jurisdiction to review the district court's ruling on the State's motion to prosecute D.D.M. as an adult.

STATUTORY PROVISIONS

A. Standard of Review

The interpretation of a statute is a question of law over which an appellate court exercises unlimited review. State v. Arnett, 290 Kan. 41, 47, 223 P.3d 780 (2010).

B. Analysis

Before considering the sufficiency of the evidence in this case, we pause to review the applicable statute to ascertain the determinations the district court was required to make in order to designate the proceedings as an extended jurisdiction juvenile prosecution. The issues involved here are governed by K.S.A. 2010 Supp. 38-2347.
K.S.A. 2010 Supp. 38-2347(a)(1) provides that the prosecutor "may file a motion requesting that the court authorize prosecution *10 of the juvenile as an adult under the applicable criminal statute," and that "[t]he juvenile shall be presumed to be a juvenile unless good cause is shown to prosecute the juvenile as an adult." However, K.S.A. 2010 Supp. 38-2347(a)(2) lists certain circumstances under which the juvenile "shall be presumed to be an adult." All agree that the presumption applies in this case.
The statute also governs the implementation of the procedure referred to as an extended jurisdiction juvenile prosecution. K.S.A. 2010 Supp. 38-2347(a)(3) permits the prosecutor to file a motion requesting the court to designate proceedings as an extended jurisdiction juvenile prosecution. Subsection (a)(4) lists the same circumstances set forth in the adult presumption provision of (a)(2) and provides that if those circumstances exist, "the burden is on the juvenile to rebut the designation of an extended jurisdiction juvenile prosecution by a preponderance of the evidence." K.S.A. 2010 Supp. 38-2347(a)(4).
K.S.A. 2010 Supp. 38-2347(e) sets forth the eight factors quoted earlier in this opinion. The court is directed to consider each of those factors when determining either to authorize adult prosecution or to designate the proceeding as an extended jurisdiction juvenile prosecution. The provision clarifies that "[t]he insufficiency of evidence pertaining to any one or more of the factors listed in this subsection, in and of itself, shall not be determinative of the issue." K.S.A. 2010 Supp. 38-2347(e). Further, the court is specifically permitted to consider "written reports and other materials relating to the juvenile's mental, physical, educational and social history." K.S.A. 2010 Supp. 38-2347(e).
The first three subsections of K.S.A. 2010 Supp. 38-2347(f) address the dispositional options available to the district court. Those provisions are:
"(f)(1) The court may authorize prosecution as an adult upon completion of the hearing if the court finds from a preponderance of the evidence that the alleged juvenile offender should be prosecuted as an adult for the offense charged. In that case, the court shall direct the alleged juvenile offender be prosecuted under the applicable criminal statute and that the proceedings filed under this code be dismissed.
"(2) The court may designate the proceeding as an extended jurisdiction juvenile prosecution upon completion of the hearing if the juvenile has failed to rebut the presumption or the court finds from a preponderance of the evidence that the juvenile should be prosecuted under an extended jurisdiction juvenile prosecution.
"(3) After a proceeding in which prosecution as an adult is requested pursuant to subsection (a)(2), and prosecution as an adult is not authorized, the court may designate the proceedings to be an extended jurisdiction juvenile prosecution." K.S.A. 2010 Supp. 38-2347(f).
What is conspicuous in these dispositional provisions is the use of the word, "may," connoting that the district court is not required to order either adult prosecution or extended jurisdiction juvenile prosecution, i.e., such rulings are discretionary. To the extent that the district court suggested that it had only two optionsadult prosecution or extended jurisdiction juvenile prosecutionit was incorrect. Subsection (f)(3) clearly permits the district court to designate the proceedings as an extended jurisdiction juvenile prosecution upon a denial of a motion for adult prosecution, but such a designation is not required.
Additionally, the findings which are required for the court to exercise its discretion are curiously vague. In subsection (f)(1), the court may authorize adult prosecution if it finds from a preponderance of the evidence that the juvenile "should be prosecuted as an adult." K.S.A. 2010 Supp. 38-2347. That provision says nothing about the juvenile's failure to rebut the presumption of subsection (a)(2). However, we should not isolate that vague language. Rather, we must read it in conjunction with the presumption set forth in subsection (a)(2) and the mandatory factors set forth in subsection (e). See State v. Breedlove, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008) (when construing statutes to determine legislative intent, appellate court must consider the various provisions of an act in pari materia with a view of reconciling *11 and bringing the provisions into workable harmony, if possible). Therefore, a district court's finding that a juvenile "should" be prosecuted as an adult must necessarily involve an analysis of the statutory factors in light of the presumption.
In contrast, subsection (f)(2) says that the court may designate the proceeding as an extended jurisdiction juvenile proceeding under two circumstances: (1) if the juvenile failed to rebut the presumption; or (2) the court finds from a preponderance of the evidence that the "juvenile should be prosecuted under an extended jurisdiction juvenile prosecution." K.S.A. 2010 Supp. 38-2347. However, the provision does not explicitly say whether it is referring to the presumption of adult prosecution set forth in subsection (a)(2) or to the shifting of the burden to rebut extended jurisdiction juvenile prosecution set forth in subsection (a)(4).
Again, we must read all the provisions together. Subsection (f)(3) specifically addresses the circumstance where a motion for adult prosecution has been denied and the court is considering other alternatives. Therefore, the legislature must have intended subsection (f)(2) to apply when the prosecutor files a motion for extended jurisdiction juvenile prosecution under subsection (a)(3) without also seeking adult prosecution. Accordingly, to be meaningful, the presumption to which the legislature referred in subsection (f)(2) must be the presumption of extended jurisdiction juvenile prosecution described in subsection (a)(4). Given that the State's motion in this case requested adult prosecution, rather than extended jurisdiction juvenile prosecution, the provisions of K.S.A. 2010 Supp. 38-2347(f)(2) would not be applicable.

SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE DISTRICT COURT'S RULING

A. Standard of Review

Given our analysis of K.S.A. 2010 Supp. 38-2347, it may be necessary to clarify the standard of review we apply when considering a district court's determination of whether to prosecute a juvenile as an adult. Previously, we have said:
"An appellate court reviews the district court's decision to allow the State to prosecute a juvenile as an adult to determine whether the decision is supported by substantial evidence. State v. Mays, 277 Kan. 359, 363, 85 P.3d 1208 (2004). `"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."' 277 Kan. at 363 [85 P.3d 1208] (quoting [State v. Jones, 273 Kan. 756, Syl. ¶ 2, 47 P.3d 783, cert. denied 537 U.S. 980 [123 S.Ct. 444, 154 L.Ed.2d 341] (2002)])." State v. Nguyen, 285 Kan. 418, 431-32, 172 P.3d 1165 (2007).
The reviewing court "`"`accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial judge.'" Taylor v. State, 252 Kan. 98, 104, 843 P.2d 682 (1992) (quoting Short v. Wise, 239 Kan. 171, 178, 718 P.2d 604 [1986].)'" In re J.D.J., 266 Kan. 211, 217, 967 P.2d 751 (1998). "It is not for this court to reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses." State v. Medrano, 271 Kan. 504, 507, 23 P.3d 836 (2001).
While the district court's factual findings must be supported by substantial competent evidence, we must give deference to the court's evaluation or characterization of those facts. K.S.A. 2010 Supp. 38-2347(e) directs the district court to consider the eight statutory factors and in doing so the court is not constrained by the insufficiency of evidence to support one or more of the factors. Such a directive necessarily connotes the exercise of discretion in evaluating and weighing the factors to determine whether the juvenile "should" be prosecuted as an adult. Accordingly, the district court's assessment of the eight statutory factors which is based upon proved facts should be reviewed for an abuse of discretion.

B. Analysis

The Court of Appeals appears to have been influenced by the fact that D.D.M. did *12 not put on any direct evidence at the motion hearing. As the State conceded at oral argument, the district court is certainly permitted to consider evidence which is elicited through the cross-examination of the State's witnesses. Further, the district court is statutorily permitted to consider "written reports and other materials relating to the juvenile's mental, physical, educational and social history." K.S.A. 2010 Supp. 39-2347(e). Here, the court had D.D.M.'s prior juvenile files, records, and reports, in addition to testimony describing the circumstances of the current offense.
Considering the evidence before it, the district court reviewed the requisite statutory factors. Under the first factorseriousness of the crime and protection of the communitythe court noted that D.D.M.'s most serious charge was a level 3 person felony, but not an off-grid, level 1 or level 2 felony. Further, the court found the community could be protected without adult prosecution because the extended jurisdiction juvenile prosecution could result in D.D.M. being held in a juvenile correctional facility for more than 6 years. The facts involved in the court's assessment of this factor are undisputed.
The second factor is whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner. The district court recognized the presence of the threat of violence in the present crime, but opined that the offenses were not committed in a particularly aggressive manner and that no acts of violence actually occurred. The court had a first-hand description of the events from one of the victims as a basis for its assessment of this factor.
Next, the court found D.D.M.'s current offense was against a person, not property, which is to be given greater weight under the statute. However, there is an inference that no personal injury resulted, given the court's finding that there were no acts of violence.
Under the fourth factor, the court found that D.D.M. had no unadjudicated alleged offenses pending. However, under the fifth factor, D.D.M. had two prior juvenile adjudications, albeit neither case involved offenses against persons.
When considering D.D.M.'s sophistication or maturity under the sixth factor, the district court noted that the crime was committed on a bicycle and that most 16-year-olds would be driving a car. However, the court also noted that D.D.M.'s prior conviction for driving under the influence might have explained the use of bicycle. D.D.M. contends that the district court's assessment that he "may not be as mature as other juveniles" must be given deference because the court was in a position to observe him. That inference would be more compelling if the court had not specifically ascribed its assessment of immaturity to the use of the bicycle. Nevertheless, K.S.A. 2010 Supp. 38-2347(e) specifically provides that the insufficiency of evidence pertaining to any one or more of the factors is not determinative.
The seventh factor requires the district court to assess whether there are facilities or programs available which are likely to rehabilitate the juvenile before the juvenile court loses jurisdiction. Here, the district court specifically found that D.D.M. "is more likely to be rehabilitated in the juvenile system than in the adult correctional system." The court noted that the juvenile system will have jurisdiction over D.D.M. for 6 or more years to rehabilitate him. In response, the State argues that D.D.M.'s prior stint at a juvenile correctional facility did not effect rehabilitation and that it is time for D.D.M. to enter the adult system. Certainly, reasonable people may differ in their opinion as to the relative chances of rehabilitative success in the juvenile and adult correctional systems. However, we decline to substitute our judgment for that of the district judge.
The final factor is an assessment of whether the interests of the juvenile and of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution. The district court declared that "[t]he interests of [D.D.M.] and community will be better served if the juvenile is prosecuted under the extended juvenile prosecution statutes." Based on its assessments of the factors, the district court found that D.D.M. had met his burden to overcome the presumption of adult prosecution.
*13 The Court of Appeals acknowledged that the district court had addressed the statutory factors of 38-2347(e), but found that the court's decision to try D.D.M. as a juvenile was made solely on the basis of his juvenile record. The panel then pointed out certain facts that it had apparently gleaned from that record: D.D.M. had been in out-of-home placement since 2004 when his juvenile history began; he stole from a store when he was 12 years old; he has been using marijuana since he was 11 years old; and he stole a car in 2007. Based on those observations, the Court of Appeals declared: "There is no substantial competent evidence to support the district court's decision to prosecute D.D.M. under the extended jurisdiction juvenile prosecution statutes." In re D.D.M., No. 101,868, 2009 WL 3428790, at *4 (Kan. App.2009) (unpublished opinion).
First, the district court's findings belie the notion that its decision was based solely on the juvenile record. Nevertheless, we see nothing which would preclude a district court from relying solely on the files, records, and reports in prior adjudications, if they contain substantial competent evidence to allow the district court to assess the statutory factors.
More importantly, however, it is not the proper function of a reviewing court to look for facts which would support a finding contrary to the decision reached by the district court. Rather, as noted, the reviewing court must accept as true the evidence and accompanying inferences "`which support or tend to support the findings of the trial judge.'" (Emphasis added.) Taylor, 252 Kan. at 104, 843 P.2d 682. Further, it is inappropriate for a reviewing court to "substitute its evaluation of the evidence for that of the trial court." Medrano, 271 Kan. 504, Syl. ¶ 1, 23 P.3d 836.
Applying the appropriate review standard, we find that the district court's factual findings were supported by the evidence and that the district court did not abuse its discretion in assessing the statutory factors. The Court of Appeals is reversed, and the district court's order for extended jurisdiction juvenile prosecution is affirmed. Given our decision to affirm the extended jurisdiction juvenile prosecution, we need not address whether the Court of Appeals erred in directing the district court to order adult prosecution.
The Court of Appeals is reversed; the district court is affirmed.
MERLIN G. WHEELER, District Judge, assigned.