NOT DESIGNATED FOR PUBLICATION

No. 126,484

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

O.H.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; MICHAEL HOELSCHER, judge. Submitted without oral argument. Opinion filed September 20, 2024. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., GREEN and HILL, JJ.


PER CURIAM: At 15 years old, O.H. was charged as a juvenile with first-degree murder, aggravated robbery, and criminal use of weapons. The district court later granted the State's motion to prosecute him as an adult. O.H. pleaded guilty to second-degree intentional murder and aggravated robbery. O.H. now appeals the district court's order authorizing adult prosecution, arguing that the State failed to rebut the presumption that he be tried as a juvenile. Having reviewed the record, we find no error and affirm.

1

*Factual and Procedural Background*

We summarize the acts leading to O.H.'s conviction because they relate to the factors the district court must consider in deciding whether to allow adult prosecution of a juvenile. On August 19, 2019, Joshua Armbeck got a phone call from Pierce Jackson asking Joshua to come over and sell an ounce of marijuana. When Joshua delivered the marijuana, four males were at the residence—Jackson, Marcus Lamar, T.J., who was 17, and O.H., who was 15. O.H. had Jackson's handgun, pointed it at Joshua, and instructed him to hand over his backpack and wallet. Joshua complied in fear of being shot. The four males then ran out of the residence with Joshua's backpack. Joshua called his brother, Jerome Armbeck, and told him he had been robbed and was chasing the robbers on a nearby golf course. Jerome was near the golf course and helped Joshua pursue the robbers who had taken his belongings. Jerome eventually caught Lamar, who yelled for help. O.H. returned to help Lamar and shot Jerome twice in the chest, killing him at the scene.

The State charged O.H. with first-degree felony murder, an off-grid person felony; aggravated robbery, a severity level 3 person felony; and criminal use of weapons, a class A nonperson misdemeanor. The State then moved to prosecute O.H. as an adult. After evidentiary hearings on the matter, in May 2021 the district court granted the State's motion.

O.H. pleaded guilty to amended charges of second-degree intentional murder, a severity level 1 person felony, and aggravated robbery, a severity level 3 person felony. In exchange for his guilty pleas, the State dismissed the criminal use of weapons charge, recommended the high sentencing range of each remaining count, and recommended the sentences run concurrent, provided O.H. gave truthful testimony if called to testify against Lamar, Jackson, and/or T.J. The district court found O.H. guilty of murder in the

2

second degree—sentencing him to 165 months' imprisonment—and guilty of aggravated robbery—sentencing him to a concurrent sentence of 61 months' imprisonment.

O.H. timely appeals, challenging only the district court's decision authorizing his adult prosecution.

*Did the District Court Err in Granting the State's Motion to Authorize Adult Prosecution of O.H.?*

O.H. argues the district court erred by allowing the State to prosecute him as an adult. He claims the district court lacked substantial competent evidence to support its finding and abused its discretion in evaluating some of the factors used to determine whether a juvenile should be tried as an adult. O.H. asks this court to reverse and remand with instructions to proceed under the Revised Kansas Juvenile Justice Code, K.S.A. 38-2301 et seq.

We use a bifurcated standard of review when reviewing a district court's determination on a motion to authorize adult prosecution of a juvenile. First, we review the district court's factual findings for substantial competent evidence. "'Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.'" *In re D.D.M.*, 291 Kan. 883, 893, 249 P.3d 5 (2011). Appellate courts do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Vonachen*, 312 Kan. 451, 464, 476 P.3d 774 (2020).

Second, we review the district court's legal assessment of the eight statutory factors set out in K.S.A. 38-2347(d) for an abuse of discretion. A district court abuses its discretion if its decision is based on an error of fact or law or is arbitrary, fanciful, or unreasonable. To the extent this court must interpret K.S.A. 38-2347(d), it has unlimited

review. *Vonachen*, 312 Kan. at 471. This court has jurisdiction to consider the issue on appeal despite the fact O.H.'s conviction was the result of a guilty plea, as Kansas law allows a juvenile to appeal an order authorizing adult prosecution after conviction as an adult. K.S.A. 38-2380(a).

The term "[j]uvenile" is statutorily defined as a person who is at least 10 years old but less than 18 years old. K.S.A. 38-2302(n). This includes O.H., who was 15 years old at the time he committed the crimes. A juvenile is presumed to be a juvenile, and the State has the burden to rebut such presumption by a preponderance of the evidence. K.S.A. 38-2347(a)(1).

K.S.A. 38-2347(d) provides eight factors the district court must consider in deciding whether to allow adult prosecution of a juvenile:

1. "The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceedings as an extended jurisdiction juvenile prosecution";
2. "whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner";
3. "whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted";
4. "the number of alleged offenses unadjudicated and pending against the juvenile";
5. "the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender under this code or the Kansas juvenile justice code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence";

6. "the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living or desire to be treated as an adult";

7. "whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction under this code; and"

8. "whether the interests of the juvenile or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution."

The district court considered all eight factors. The factors are to be considered holistically along with other materials or written reports related to the juvenile's physical, mental, social, and educational history. K.S.A. 2019 Supp. 38-2347(d).

The parties agree that the district court appropriately found O.H. had no other pending unadjudicated offenses and had no prior history of juvenile adjudications. And they do not dispute on appeal the district court's finding O.H. was not regularly functioning as an adult. It is thus uncontested that factors 4, 5, and 6 cut against adult prosecution. O.H. claims that the district court erroneously found the other five factors were supported by substantial competent evidence, and that its legal assessment based on such factual findings resulted in the erroneous decision to prosecute him as an adult. We address those five factors below.

*Factors 1-3*

First, O.H. raises a legal argument. He contends that the first three factors are redundant and should be viewed as one factor broken into three parts. But our Supreme Court has rejected this argument multiple times. See *Vonachen*, 312 Kan. at 472-73 ("If the Legislature intended for factors one through three to be satisfied and considered as a single factor anytime the charged crime is an off-grid offense, it would have said so.");

*State v. Brown*, 300 Kan. 542, 552, 331 P.3d 781 (2014) ("Each of these first three factors concern[s] different subject matter. . . . They are not redundant or surplus just because they might necessarily weigh in favor of adult prosecution when particular crimes are alleged.").

O.H. argues that very few crimes are serious offenses committed in an aggressive, violent, premeditated, or willful manner that are *not* against a person. But O.H. fails to acknowledge our Supreme Court precedent rejecting similar arguments, and he fails to point to authority showing our Supreme Court is departing from its position. And we are duty-bound to follow controlling Kansas Supreme Court precedent absent some indication that the court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

Second, O.H. attacks the district court's factual findings. The district court explained why the first three factors favor adult prosecution:

> "Murder in the first degree is one of the most serious person [felonies] that can be committed under Kansas law, and aggravated robbery is also a very serious person felony. In the present case, these offenses are alleged to have resulted in Joshua Armbeck being robbed at gunpoint, and they are alleged to have resulted in the loss of Jerome Armbeck's life. . . .
>
>     . . . .
>
> " . . . [O.H.] and the three accomplices . . . are alleged to have lured Joshua Armbeck to the Mt. Vernon address for the specific purpose of robbing him at gunpoint. Joshua Armbeck testified that [O.H.] pointed a firearm at his face while demanding his wallet and backpack.
>
> "Marcus Lamar testified that he called for help in response to Jerome Armbeck grasping and holding him, and that he was eventually able to break free from Jerome's grasp. He testified that [O.H.] then told Jerome Armbeck that he needed to back up before he shot him in the chest with the handgun."

Our review shows that the record contains substantial competent evidence supporting those factual findings. Joshua testified he met up with Pierce and Lamar to sell them marijuana. O.H. and T.J. were also there during the drug transaction. Joshua testified Pierce had set him up; when the drug deal occurred, O.H. put a loaded gun in his face and demanded his backpack and wallet. Joshua gave his belongings to O.H. in fear of being shot. Joshua called his brother, and the two of them started chasing down the four people who robbed Joshua. Joshua testified he heard shots fired and later saw his brother lying on the ground.

Lamar also testified and largely corroborated Joshua's testimony. Lamar admitted the robbery was planned and, when he ran away after the robbery, someone caught him. Lamar yelled for help, which prompted O.H. to come back for him. Lamar explained that O.H. told Jerome to back up before fatally shooting Jerome in the chest. Although O.H. invites us to focus on other facts, we must decline.

> "[I]t is not the proper function of a reviewing court to look for facts which would support a finding *contrary* to the decision reached by the district court. Rather, as noted, the reviewing court must accept as true the evidence and accompanying inferences '"which *support* or tend to support the findings of the trial judge."' *Taylor*, 252 Kan. at 104. Further, it is inappropriate for a reviewing court to 'substitute its evaluation of the evidence for that of the trial court.' *Medrano*, 271 Kan. 504, Syl. ¶ 1." *In re D.D.M.*, 291 Kan. at 896.

The district court appropriately gave greater weight to O.H.'s person offenses and concluded the State established the first three factors for adult prosecution by a preponderance of the evidence.

*Factor 7*

O.H. next argues that no substantial competent evidence supports the district court's conclusion that no programs or facilities would likely rehabilitate O.H. before the expiration of the district court's jurisdiction under the juvenile code. The district court found "no programs or facilities or a combination of the two . . . are likely to rehabilitate the juvenile prior to the expiration of the Court's jurisdiction under [the juvenile code]."

Because O.H. was 17 years and 4 months old at the time of the hearing, the district court would maintain juvenile jurisdiction over him for another 3 years and 8 months. See K.S.A. 38-2304(d)(iii). The State argued "[the district judge] has practiced down here in juvenile [court] long enough to know that there really are no programs that can rehabilitate somebody from a premeditated, aggressive, and violent murder." On appeal, the State echoes that argument, reemphasizing that the district court had specific knowledge of the programs and facilities available to address violent behavior of a juvenile who had actively participated in robbing a man at gun point and then had fatally shot another man in the chest.

"[R]easonable people may differ in their opinion as to the relative chances of rehabilitative success in the juvenile and adult correctional systems." *In re D.D.M.*, 291 Kan. at 895. A reviewing court should not substitute its judgment for that of the district court. 291 Kan. at 895. While the district court could have gone into more detail on what programs and facilities it considered and why those programs and facilities were inadequate, it was not unreasonable for the judge to find, based on his specific knowledge, that no programs or facilities were available that could rehabilitate someone in O.H.'s position in three years and eight months.

*Factor 8*

Lastly, O.H. contends that no evidence supports the district court's finding that the interests of O.H. or the community would be better served by adult prosecution. We focus on two veins of evidence. First, the State argued that because O.H.'s three accomplices were to be prosecuted as adults, it would be in the community's best interest to prosecute O.H. similarly because his acts were more heinous acts than theirs. Second, O.H. ignores that he robbed a man at gunpoint and then shot another man twice in the chest, killing him. These facts provide substantial competent evidence supporting the district court's finding that the interests of the community would be better served by prosecuting O.H. as an adult.

O.H. generally contends that the court looked solely to the charges or offenses, not to the juvenile. But the district court considered O.H. and his psychological evaluation, which found that O.H. was not functioning as an adult, in evaluating Factor 6 (the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living or desire to be treated as an adult). And the court found that factor favored treating O.H. as a juvenile.

*Conclusion*

Substantial competent evidence supports the district court's factual findings that O.H. should be prosecuted as an adult. That is, the State presented evidence that was relevant and furnished a substantial basis of fact from which the district court could reasonably determine adult prosecution was appropriate. See *In re D.D.M.*, 291 Kan. at 893. And we find no abuse of discretion in the district court's assessment of the eight statutory factors.

Affirmed.